No. 25-5197

# In the United States Court of Appeals for the Ninth Circuit

GOUYEN BROWN LOPEZ, *ET AL.*,

PLAINTIFFS-APPELLANTS,

V.

UNITED STATES OF AMERICA, *ET AL.*,

DEFENDANTS-APPELLEES,

AND

RESOLUTION COPPER MINING, LLC,

INTERVENOR-DEFENDANT-APPELLEE.

On Appeal from the United States District Court
for the District of Arizona
Case No. 2:25-cv-02758-DWL (Hon. Dominic W. Lanza)

## BRIEF OF RELIGIOUS FREEDOM INSTITUTE AND ETHICS AND PUBLIC POLICY CENTER AS *AMICI CURIAE* SUPPORTING PLAINTIFFS-APPELLANTS

IAN SPEIR
COVENANT LAW PLLC
13395 Voyager #130-732
Colo. Springs, CO 80921
(719) 464-7357
ian@covtlaw.com

ERIC N. KNIFFIN
 *Counsel of Record*
RACHEL N. MORRISON
ETHICS & PUBLIC POLICY CENTER
1730 M Street, N.W.
 Suite 910
Washington, DC 20036
(202) 682-1200
ekniffin@eppc.org

*Counsel for* Amici Curiae

i

## CORPORATE DISCLOSURE STATEMENT

In compliance with Federal Rule of Appellate Procedure 26.1, I certify that *amici* have no parent corporation and no stock.


Dated: September 15, 2025        s/ Eric N. Kniffin
                                 Eric N. Kniffin
                                 *Counsel for* Amicus Curiae

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ............................................. ii

TABLE OF AUTHORITIES ................................................................... iv

STATEMENT OF INTEREST OF *AMICI CURIAE* ................................ 1

INTRODUCTION AND SUMMARY OF ARGUMENT ........................... 2

ARGUMENT ...................................................................................... 6

    I.  RFRA's five threshold limiting principles ..................................... 8

        A.  RFRA requires specific religious "exercise," not mere subjective feelings of offense. .................................................. 8

        B.  The exercise must be "religious" in nature, not personal, philosophical, or ideological. .................................................. 11

        C.  Religious exercise must be "sincere," not contrived for litigation. .......................................................................... 13

        D.  Failing to subsidize or support religious exercise is not a "burden," but inhibiting or penalizing it is. ............................ 15

        E.  A burden on religious exercise must be "substantial." ........... 22

    II. The Ninth Circuit misconceived the substantial burden analysis under RFRA. ............................................................. 27

CONCLUSION ................................................................................. 30

iii

# TABLE OF AUTHORITIES

## Cases

*Abdulhaseeb v. Calbone,*
  600 F.3d 1301 (10th Cir. 2010)........................................................22

*Apache Stronghold v. United States,*
  101 F.4th 1036 (9th Cir. 2024) (en banc).............................3, 5, 11, 27

*Apache Stronghold v. United States,*
  145 S. Ct. 148 (2025)......................................................................5

*Apache Stronghold v. United States,*
  38 F.4th 742 (9th Cir. 2022) (panel opinion) ...........................3, 18, 28

*Bostock v. Clayton County,*
  590 U.S. 644 (2020).......................................................................3

*Bowen v. Roy,*
  476 U.S. 693 (1986)....................................................................9, 10

*Burwell v. Hobby Lobby Stores*, Inc.,
  573 U.S. 682 (2014).......................................................................2

*Comanche Nation v. United States,*
  No. CIV-08-849-D, 2008 WL 4426621 (W.D. Okla. Sep. 23, 2008).....20

*Espinoza v. Mont. Dep't of Revenue,*
  591 U.S. 464 (2020).......................................................................17

*Friedman v. S. Cal. Permanente Med. Grp.,*
  125 Cal. Rptr. 2d 663 (Cal. App. 2002) ...............................................12

*Fulton v. City of Philadelphia,*
  593 U.S. 522 (2021).........................................................................6

*Gonzales v. O Centro,*
  546 U.S. 418 (2006).....................................................................2, 8

iv

*Goodall by Goodall v. Stafford Cnty. Sch. Bd.,*
  60 F.3d 168 (4th Cir. 1995)......................................................................17

*Henderson v. Kennedy,*
  253 F.3d 12 (D.C. Cir. 2001)....................................................................25

*Holt v. Hobbs,*
  574 U.S. 352 (2015)............................................................................2, 26

*Kaemmerling v. Lappin,*
  553 F.3d 669 (D.C. Cir. 2008)...............................................................8, 9

*Korte v. Sebelius,*
  735 F.3d 654 (7th Cir. 2013)...................................................................13

*Locke v. Davey,*
  540 U.S. 712 (2004)..................................................................................17

*Lozano v. Collier,*
  98 F.4th 614 (5th Cir. 2024) ...................................................................16

*Mahmoud v. McKnight,*
  102 F.3th 191 (4th Cir. 2024) .................................................................29

*Mahmoud v. Taylor,*
  145 S. Ct. 2332 (2025)........................................................................21, 29

*Mahone v. Pierce Cnty.,*
  No. 10-5847, 2011 WL 2360354 (W.D. Wash. May 24, 2011) .............15

*Makin v. Colo. Dep't of Corrs.,*
  183 F.3d 1205 (10th Cir. 1999)...............................................................18

*Mayle v. United States,*
  891 F.3d 680 (7th Cir. 2018)...................................................................10

*Murphy v. Collier,*
  139 S. Ct. 1475 (2019)..............................................................................25

*Navajo Nation v. U.S. Forest Serv.*,
    535 F.3d 1058 (9th Cir. 2008) .................................................................. 11

*Norwood v. Strada*,
    249 Fed Appx. 269 (3d Cir. 2007) ......................................................... 23

*Ochs v. Thalacker*,
    90 F.3d 293 (8th Cir. 1996) .................................................................... 14

*Oklevueha Native American Church of Hawaii, Inc. v. Lynch*,
    828 F.3d 1012 (9th Cir. 2016) ................................................................ 25

*Oregon Right to Life v. Stolfi*,
    No. 6:23-CV-01282-MK, 2024 WL 4345758 (D. Or. Sep. 30, 2024) .... 14

*Patrick v. LeFevre*,
    745 F.2d 153 (2d Cir. 1984) ............................................................ 13, 15

*Real Alternatives, Inc. v. Sec'y Dep't of Health & Hum. Servs.*,
    867 F.3d 338 (3d Cir. 2017) ............................................................. 22, 24

*Roman Catholic Diocese of Brooklyn v. Cuomo*,
    592 U.S. 14 (2020) ................................................................................... 29

*San Jose Christian College v. City of Morgan Hill*,
    360 F.3d 1024 (9th Cir. 2004) ................................................................ 24

*Sch. Dist. of Abington Twp., Pa. v. Schempp*,
    374 U.S. 203 (1963) ................................................................................. 19

*Smith v. Allen*,
    502 F.3d 1255 (11th Cir. 2007) .............................................................. 22

*Sossamon v. Texas*,
    563 U.S. 277 (2011) ................................................................................. 22

*Thiry v. Carlson*,
    78 F.3d 1491 (10th Cir. 1996) ................................................................ 25

vi

*Thomas v. Review Board,*
  450 U.S. 707 (1981)................................................................11, 14

*Trinity Lutheran Church of Columbia, Inc. v. Comer,*
  582 U.S. 449 (2017)...............................................................17, 18

*United States v. Barnes,*
  677 Fed. Appx. 271 (6th Cir. 2017). ..........................................12

*United States v. Friday,*
  525 F.3d 938 (10th Cir. 2008)........................................................24

*United States v. Manneh,*
  645 F. Supp. 2d 98 (E.D.N.Y. 2008) ............................................15

*United States v. Martines,*
  682 Fed. Appx. 768 (9th Cir. 2014) .............................................14

*United States v. Meyers,*
  95 F.3d 1475 (10th Cir. 1996)........................................................12

*United States v. Quaintance,*
  608 F.3d 717 (10th Cir. 2010)...............................................13, 14

*United States v. Seeger,*
  380 U.S. 163 (1965).......................................................................13

*Wisconsin v. Yoder,*
  406 U.S. 205 (1972).......................................................................11

*Yellowbear v. Lampert,*
  741 F.3d 48 (10th Cir. 2014).................................................. passim

## Statutes

42 U.S.C. § 2000bb-1 .......................................................................5

42 U.S.C. § 2000cc-5 .....................................................................12

## Other Authorities

Douglas Laycock & Thomas C. Berg, *Protecting Free Exercise Under* Smith *and After* Smith, Cato Sup. Ct. Rev. (2020–21) ....................... 24

James Madison, *Memorial and Remonstrance Against Religious Assessments* (1785) .............................................................................. 8

Luke W. Goodrich & Rachel N. Busick, *Sex, Drugs, and Eagle Feathers: An Empirical Study of Federal Religious Freedom Cases*, 48 Seton Hall L. Rev. 353 (2018) ............................................ 3, 5

Michael W. McConnell, *Religious Freedom at a Crossroads*, 59 U. Chi. L. Rev. 115 (1992) ....................................................................... 20

Michael W. McConnell, *The Origins and Historical Understanding of Free Exercise of Religion*, 103 Harv. L. Rev. 1409 (1990) .............. 14

Nathan S. Chapman, *Adjudicating Religious Sincerity*, 92 Wash. L. Rev. 1185 (2017) .............................................................................. 16

Sherif Girgis, *Defining "Substantial Burdens" on Religion and Other Liberties*, 108 Va. L. Rev. 1759 (2022) ........................... 3, 11, 31

Stephanie Hall Barclay & Michalyn Steele, *Rethinking Protections for Indigenous Sacred Sites*, 134 Harv. L. Rev. 1294 (2021). ..... passim

## STATEMENT OF INTEREST OF *AMICI CURIAE*[1]

*Amicus Curiae* Religious Freedom Institute (RFI) is committed to achieving broad acceptance of religious liberty as a fundamental human right, a source of individual and social flourishing, the cornerstone of a successful society, and a driver of national and international security. Among its core activities, RFI equips students, parents, policymakers, professionals, faith-based organization members, scholars, and religious leaders through programs and resources that communicate the true meaning and value of religious freedom, and apply that understanding to contemporary challenges and opportunities. RFI works to secure religious freedom for everyone everywhere because human dignity and human nature demand it, and human flourishing depends on it.

*Amicus Curiae* Ethics and Public Policy Center (EPPC) is a nonprofit research institution founded in 1976 and dedicated to applying the Judeo-Christian moral tradition to critical issues of public policy, law, culture, and politics. EPPC's programs cover a wide range of issues,

---

[1] All parties have consented to the filing of this brief. Pursuant to Federal Rule of Appellate Procedure 29(a)(4), *amici* state that no party's counsel authored this brief in part or in whole, and no person (other than *amici*, their members, and their counsel) has contributed money to fund the preparation or submission of this brief.

1

including government accountability, judicial restraint, and religious liberty.

*Amici* regularly submit friend-of-the-court briefs in religious liberty cases, and amici write here to highlight limiting principles under the Religious Freedom Restoration Act that allow courts to protect religious liberty and weed out unwarranted exemption claims.

## INTRODUCTION AND SUMMARY OF ARGUMENT

The Religious Freedom Restoration Act (RFRA) promises "very broad protection for religious liberty." *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 693 (2014). In the decades since the enactment of RFRA and its sister statute, the Religious Land Use and Institutionalized Persons Act (RLUIPA), the Supreme Court has acted to fulfill that promise, vindicating the fundamental right to practice one's faith free of government-imposed burdens that don't meet a rigorous balancing test. *See id.*; *Holt v. Hobbs*, 574 U.S. 352, 355 (2015) (calling RFRA and RLUIPA "sister statute[s]"); *Gonzales v. O Centro*, 546 U.S. 418 (2006).

Some worry, however, that RFRA "fail[s] to impose sensible limits on exemptions" and overprotects religious exercise at the expense of government objectives. *See* Sherif Girgis, *Defining "Substantial Burdens"*

2

*on Religion and Other Liberties*, 108 Va. L. Rev. 1759, 1762 (2022) (citing such critics); Luke W. Goodrich & Rachel N. Busick, *Sex, Drugs, and Eagle Feathers: An Empirical Study of Federal Religious Freedom Cases*, 48 Seton Hall L. Rev. 353, 356 (2018) (discussing and dispelling this "common narrative"). Policy concerns like these featured prominently in this Court's panel and en banc opinions in the related case *Apache Stronghold v. United States. See* 38 F.4th 742, 756 (9th Cir. 2022) (panel opinion) ("Were the scope of a substantial burden under RFRA" too broad, "any" government action "would be subject to the personalized oversight of millions of citizens." (cleaned up)); 101 F.4th 1036, 1055 (9th Cir. 2024) (en banc) (too expansive view of free exercise would impose "religious servitude[s]" on government land and "confer de facto beneficial ownership of some rather spacious tracts of public property" (cleaned up)).

Whatever the merit of these concerns, they are for Congress to address, not courts. After all, RFRA is a statute—a "super statute," *Bostock v. Clayton County*, 590 U.S. 644, 682 (2020), but a statute nonetheless—and Congress can alter RFRA's general rule. It could specify, for example, that RFRA's balancing test doesn't apply, or applies

differently, to the government's "internal affairs" (however defined), its management and transfer of federal lands, this land-transfer project specifically, or other federal contexts. But Congress hasn't done that, and the Ninth Circuit was wrong to take up the legislative pen in Congress's stead.

In any event, these policy concerns are unfounded. RFRA is indeed a thumb on the scale for religious liberty, but it is not an unconstrained liberty. By its terms, RFRA contains at least five textually based limiting principles that temper religious liberty claims and sensibly limit exemptions. Under RFRA, a plaintiff must make a threshold showing of a (1) substantial (2) burden on (3) sincere (4) religious (5) exercise. Only then must the government come forward with a compelling interest advanced by the least restrictive means. RFRA's threshold showing isn't onerous, but nor is it toothless. These limiting principles do real work, even in hard cases. *See* Goodrich & Busick, *supra,* at 356 (concluding that "[c]ourts have had no problem weeding out weak or insincere RFRA claims," and "[i]f anything, RFRA has been underenforced").

As Justices Gorsuch and Thomas noted, the *Apache* decision "abandon[s] the statutory text in favor of guesswork about unenacted

4

congressional purposes." *Apache Stronghold v. United States*, 145 S. Ct. 1480, 1487 (2025) (Gorsuch, J., dissenting from denial of certiorari). No other circuit has adopted anything like the Ninth Circuit's "internal affairs" test. *Id.* at 1488 (collecting cases).

Recognizing the obvious here—that destroying a unique religious site works a substantial burden on the Apaches' sincere religious exercise—is a straightforward application of RFRA's plain language. It does not open the floodgates for "any individual" to "exact" "easement[s]" on "all federal land," nor does it invite courts to engage in theological speculation. *Contra Apache Stronghold*, 101 F.4th at 1083 (opinion of Bea, J.). To the contrary, it is the Ninth Circuit's novel conception of the substantial burden analysis—walling off from RFRA's scrutiny whatever vaguely qualifies as the government's "internal affairs"—that will have pernicious effects far beyond this case.

*Amici* urge this Court to use this case to correct the errors in *Apache* and align the Ninth Circuit's substantial burden analysis with its sister circuits and the Supreme Court's recent decision in *Mahmoud v. Taylor*.

5

## ARGUMENT

RFRA's central command is that "[g]overnment shall not substantially burden a person's exercise of religion" unless doing so is the "least restrictive means" of furthering a "compelling governmental interest." 42 U.S.C. § 2000bb-1(a), (b). RFRA is not, however, a "categorical strict scrutiny regime," applicable just because a plaintiff claims her free exercise is burdened. *Cf. Fulton v. City of Philadelphia*, 593 U.S. 522, 543 (2021) (Barrett, J., concurring). Rather, built into its statutory text are at 5 least five meaningful limits. At the threshold, RFRA applies only when a plaintiff can show a (1) substantial (2) burden on (3) sincere (4) religious (5) exercise. Taking these elements in reverse order facilitates the analysis.

First, the claim must seek to protect a specific religious "exercise"— an act or abstention rooted in religious belief. Mere subjective feelings of offense or sacrilege don't qualify.

Second, the exercise must be "religious," deriving in some sense from the "duty which we owe to our Creator." James Madison, *Memorial and Remonstrance Against Religious Assessments* (1785). Acts or

6

abstentions rooted in personal, philosophical, or ideological opposition don't qualify.

Third, the religious exercise must be "sincere"— a genuinely held, good-faith expression of religious conviction. Practices contrived for litigation don't qualify.

Fourth, government action must "burden" a sincere religious exercise, meaning it must inhibit or penalize it in some way. Mere refusals to subsidize or support religious observance don't qualify.

Fifth, the burden must be "substantial"—that is, of ample or considerable amount. Interference that is fleeting or de minimis, or that allows religiously acceptable alternatives, doesn't qualify.

As the discussion below demonstrates, courts don't always precisely distinguish these concepts, often simply lumping them into a conclusion about "substantial burden." But these principles are in play in every case, even if not always disputed, and they help courts sift the wheat of religious liberty from the chaff of unwarranted exemption claims.

Further, even when RFRA's fivefold threshold showing is met, the government still has the opportunity to show it is furthering a compelling interest by the least restrictive means. This is a demanding and "focused"

7

inquiry to be sure, but not insurmountable, and this Court has never "doubt[ed] that there may be instances in which a need for uniformity precludes the recognition of exceptions to generally applicable laws under RFRA." *O Centro*, 546 U.S. at 436; see also *Yellowbear v. Lampert*, 741 F.3d 48, 57 (10th Cir. 2014) (Gorsuch, J.) ("RLUIPA anticipates that its solicitude for religious exercise must sometimes yield to other competing state interests.").

## I. RFRA's five threshold limiting principles

### A. RFRA requires specific religious "exercise," not mere subjective feelings of offense.

The "exercise" that RFRA protects is an act or abstention rooted in religious belief. "Religious exercise necessarily involves an action or practice," and to trigger RFRA, government must pressure an adherent to "modify his religious behavior" or "interfere with [a] religious act in which he engages." *Kaemmerling v. Lappin*, 553 F.3d 669, 679 (D.C. Cir. 2008). By contrast, simply taking offense at something the government does isn't protected.

*Kaemmerling* illustrates the point. The plaintiff there didn't object to the government's collection of his tissue sample. His objection, rather, was to the government's later analysis of the sample to collect DNA

information, which the plaintiff claimed to "kno[w]" was an "unholy act of an oppressive regime." *Id.* at 678–69 (cleaned up). This failed to "identify any 'exercise' which is the subject of the burden to which he objects." *Id.* at 679. "*Kaemmerling* alleges no religious observance that the DNA Act impedes, or acts in violation of his religious beliefs that it pressures him to perform." *Id.*

The Supreme Court's decision in *Bowen v. Roy*, 476 U.S. 693 (1986), rests on the same principle. While the Court framed the plaintiff's claim as an effort to "dictate the Government's internal procedures," *id.* at 700, rightly understood, *Bowen* is a case about lack of religious exercise at all. The Court reasoned that the plaintiff could "no more prevail on his religious objection to the Government's use of a Social Security number for his daughter than he could on a sincere religious objection to the size or color of the Government's filing cabinets." *Id.* His objection was only to the way "the Government itself" behaved without any actual "impair[ment]" of his "freedom to believe, express, and exercise his religion." *Id.* at 699–700 (cleaned up, second emphasis added). As Professor Girgis has argued, *Bowen's* result is correct, not because of a distinction between "internal affairs" and "external effects" of

government action, but because the relevant government action did not "inhibit the claimant's religious conduct." Girgis, *supra*, at 1806.

This is also why a majority of the Court ruled in favor of the *Bowen* plaintiff on the one aspect of his claim that involved his own religious exercise. Besides his unsuccessful challenge to the government's own internal use of a Social Security number for his daughter, the plaintiff in *Bowen* objected to the requirement that he himself "furnish" a number to obtain benefits. 476 U.S. at 701. On that claim, a majority voted in his favor—because conditioning governmental benefits on a religiously forbidden action impeded his own religious exercise. *Id.* at 716 (Blackmun, J., concurring) ("[T]he Government may not deny assistance" where the "parents' religious convictions prevent them from supplying the Government with a social security number for their daughter."); *id.* at 732 (O'Connor, J., joined by Brennan and Marshall, JJ.) (same); *id.* at 733 (White, J., dissenting) (same).

Other cases recognize that adverse effects on subjective feelings and experiences don't clear RFRA's threshold. *See Mayle v. United States*, 891 F.3d 680 (7th Cir. 2018) (rejecting RFRA claim because mere subjective feelings of "guilt, shame, and … fear" to the presence of "In

10

God We Trust" on U.S. currency were not a "substantial burden"); *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1063 (9th Cir. 2008) (RFRA claim fails where "sole effect of [government action] is on the Plaintiffs' subjective spiritual experience"), overruled on other grounds by *Apache Stronghold*, 101 F.4th 1036.

**B.     The exercise must be "religious" in nature, not personal, philosophical, or ideological.**

"Courts are not arbiters of scriptural interpretation." *Thomas v. Review Board*, 450 U.S. 707, 716 (1981). But RFRA's protection for "religious" exercise requires a threshold look at whether an objection has its source "in religious belief" as opposed to personal, philosophical, or ideological considerations. *Wisconsin v. Yoder*, 406 U.S. 205, 216 (1972). "A way of life, however virtuous and admirable, … based on purely secular considerations" "does not rise to the demands of the Religion Clauses." *Id.* Thus, for example, the Free Exercise Clause would not protect Thoreau's decision to "reject[] the social values of his time," given that his "choice was philosophical and personal rather than religious." *Id.* So, too, with RFRA and RLUIPA, which protect "only" those convictions "motivated by religious faith—in recognition, no doubt, of the unique role religion, its free exercise, and its tolerance have played in the nation's

11

history." *Yellowbear*, 741 F.3d at 53; *see* Michael W. McConnell, *The Origins and Historical Understanding of Free Exercise of Religion*, 103 Harv. L. Rev. 1409, 1498 (1990) ("From the perspective of the advocates of religious freedom in 1789, the protection of private judgment (secular 'conscience') fundamentally differs from the protection of free exercise of religion.").

That is why the court rejected the defendant's RFRA defense in *United States v. Barnes*, 677 Fed. Appx. 271 (6th Cir. 2017). His "belief in marijuana was primarily a personal one," a finding bolstered by his "long history of marijuana use, his quick epiphany and conversion to the Church of Anyana-Kai, … and [his] admission that marijuana was not a necessary part of his religion." *Id*. at 277; *see also United States v. Meyers*, 95 F.3d 1475, 1484 (10th Cir. 1996) (drawing on First Amendment precedents for definition of "religious" and rejecting RFRA defense because belief in "[m]arijuana's medical, therapeutic, and social effects" was "secular, not religious"); *Friedman v. S. Cal. Permanente Med. Grp.*, 125 Cal. Rptr. 2d 663, 685 (Cal. App. 2002) (extensively discussing what counts as "religious" and concluding that "[w]hile veganism compels

12

plaintiff to live in accord with strict dictates of behavior, it reflects a moral and secular, rather than religious, philosophy").

### C. Religious exercise must be "sincere," not contrived for litigation.

Under RFRA, courts don't ask whether a particular practice is "compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). But they do ask about a plaintiff's sincerity. Sincerity is a "threshold question" "in every case" because "[w]hile the truth of a belief is not open to question, there remains the significant question whether it is truly held." *United States v. Seeger*, 380 U.S. 163, 185 (1965).

Sincerity "is a factual matter," *United States v. Quaintance*, 608 F.3d 717, 721 (10th Cir. 2010) (Gorsuch, J.), in which a court "seeks to determine an adherent's good faith in the expression of his religious belief," *Patrick v. LeFevre*, 745 F.2d 153, 157 (2d Cir. 1984). Courts adjudicate religious sincerity just like "any other factual determination of a party's mental state." Nathan S. Chapman, *Adjudicating Religious Sincerity*, 92 Wash. L. Rev. 1185, 1191 (2017); *see Korte v. Sebelius*, 735 F.3d 654, 683 (7th Cir. 2013) ("Checking for sincerity and religiosity" is well within a "court's authority and competence" and helps to "weed out sham claims."). But courts should be careful not to "infe[r] insincerity

13

from a religious belief's inaccuracy or implausibility." Chapman, supra (emphases in original). As this Court put it in *Thomas*, the question is whether the claimant "drew a line" reflecting an "honest conviction," not whether that conviction is or isn't reasonable. 450 U.S. at 715. In *Quaintance*, the Tenth Circuit rejected a RFRA defense because "numerous pieces of evidence" "strongly suggest[ed]" the defendants' "marijuana dealings were motivated by commercial or secular motives rather than sincere religious conviction." 608 F.3d at 722; *see also United States v. Martines*, 682 Fed. Appx. 768 (9th Cir. 2014) (similar conclusion). Similar logic obtained in *Ochs v. Thalacker*, 90 F.3d 293, 296 (8th Cir. 1996): "[W]e are skeptical that Ochs's request to be racially segregated, first made in the midst of prison racial disturbances, reflected a sincerely held religious belief." As numerous decisions attest, sincerity is a robust limiting principle in RFRA and other free-exercises cases. *See Oregon Right to Life v. Stolfi*, No. 6:23-CV-01282-MK, 2024 WL 4345758, at *6 (D. Or. Sep. 30, 2024) ("review of Plaintiff's organizational documents and requirements for membership, employment, and leadership cast doubt on whether Plaintiff's opposition is genuinely religious in nature"); *Mahone v. Pierce Cnty.*, No. 10-5847, 2011 WL

14

2360354, at *7 8 (W.D. Wash. May 24, 2011) (plaintiff was not "sincere in his profession that he is Jewish" because there was "no evidence that [he] ... ever engaged in the practices and tenets of Judaism other than his stated belief that he must eat kosher foods"); *United States v. Manneh*, 645 F. Supp. 2d 98, 111 (E.D.N.Y. 2008) ("[D]efendant's religious beliefs relating to bushmeat are not the bona fide explanation for the criminal conduct she is charged with committing.").

Sincerity analysis offers "a rational means of differentiating between those beliefs that are held as a matter of conscience and those that are animated by motives of deception and fraud." *Patrick*, 745 F.2d at 157. While it may sometimes "appear to overlap with the test for what is 'religious,'" sincerity is "a discrete element in RFRA and Free Exercise analyses." *Manneh*, 645 F. Supp. 2d at 111.

## D. Failing to subsidize or support religious exercise is not a "burden," but inhibiting or penalizing it is.

Many courts treat the concept of "substantial burden" as an undifferentiated whole. But the question of whether there is a burden at all is analytically distinct from whether that burden is substantial enough to trigger strict scrutiny under RFRA.

15

As a general rule, a burden arises based on something the government does, not what it fails to do. In most contexts of American life, "voluntary choice is the baseline." *Lozano v. Collier*, 98 F.4th 614, 628 (5th Cir. 2024) (Oldham, J., concurring in judgment). People are free to make their own choices in religious matters, and "government is generally under no legal compulsion to affirmatively subsidize or support those choices." *Id*. RFRA "does not require the federal government to build churches or employ rabbis." *Id*.

In voluntary-choice cases, government creates a burden when it "bring[s] to bear its sovereign power in a way that inhibits … religious voluntarism," thereby decreasing a person's ability to practice their faith "consistent with their own free self development." Stephanie Hall Barclay & Michalyn Steele, *Rethinking Protections for Indigenous Sacred Sites*, 134 Harv. L. Rev. 1294, 1325 (2021). Burden analysis thus begins with a "hypothetical world in which individuals make decisions about religion on the basis of their own religious conscience," then asks whether and to what extent a particular government action interferes with those decisions. *See* Michael W. McConnell, *Religious Freedom at a Crossroads*, 59 U. Chi. L. Rev. 115, 169 (1992). The aim is to "ensure that religion

16

remains a matter of voluntary choice by individuals and their associations." *Espinoza v. Mont. Dep't of Revenue*, 591 U.S. 464, 514 (2020) (Gorsuch, J., concurring) (cleaned up). And as long as government doesn't interfere with voluntary choice, it doesn't burden free exercise. *See, e.g., Goodall by Goodall v. Stafford Cnty. Sch. Bd.*, 60 F.3d 168, 172 (4th Cir. 1995) (county not required to pay for child's cued speech transliterator in private religious school because RFRA and Free Exercise Clause do not "impose upon the government an obligation to subsidize" voluntary choices).

But there are at least two contexts where this general rule is altered. The first is public-benefit cases. When government "makes a public benefit generally available, that benefit becomes part of the baseline against which burdens on religion are measured." *Locke v. Davey*, 540 U.S. 712, 726–27 (2004) (Scalia, J., dissenting). At that point, the relevant question is not whether the religious adherent is "entitle[d] to a subsidy" but whether she has a "right to participate" in the benefit on "equal footing" without disavowing faith. *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 463 (2017) (cleaned up). Because

17

denying that right "inevitably deters or discourages"—i.e., burdens—religious exercise, heightened scrutiny applies. *Id*.

The second exception is when "government so wholly occupies the field" that government interference rather than voluntary choice is the baseline. Barclay & Steele, *supra*, at 1333. Under this heading are prison facilities, military environments, zoning, and, as relevant here, government-controlled sacred sites. In these contexts, religious observers are at the mercy of government. They can't voluntarily practice their faith unless the government affirmatively permits access or "acts to lift its coercive power through a religious accommodation." *Id*. In such cases, courts usually have no trouble recognizing a burden based on government's denial of access or failure to accommodate. *See id*. at 1333–42; e.g., *Makin v. Colo. Dep't of Corrs.*, 183 F.3d 1205, 1211 (10th Cir. 1999) ("failure to accommodate" Muslim inmate's meal requirements violated free exercise rights); *Apache Stronghold*, 38 F.4th at 780 (Berzon, J., dissenting) (numerous cases demonstrate that "government's denial of access to religious resources" is a "burden on religious exercise").

Then-Judge Gorsuch's opinion for the Tenth Circuit in *Yellowbear* is illustrative. There, a state correctional facility barred a Native

18

American prisoner from accessing a government-owned sacred site, a sweat lodge on prison grounds. 741 F.3d at 56. The prisoner's faith "require[d] at least some access" to the site but because prison policy "refuse[d] any access," the court found a RLUIPA violation. Ibid. "[F]latly prohibiting" religious exercise "easily" qualified as a substantial burden. *Id.*

This was true even though the prison had done nothing more than maintain its preexisting control over the prison yard. But that didn't matter. "This isn't a situation," then-Judge Gorsuch wrote, "where the claimant is left with some degree of choice in the matter." *Id.* So to ask about the government's "coercive influence on" or interference with "that choice" would make little sense. *See id.* This logic gets the burden analysis exactly right in cases of government control—because when government "regulates the temporal and geographic environment of individuals," it may have to take steps to "permit" religious exercise lest individuals be "unable to engage in the practice of their faiths." *Sch. Dist. of Abington Twp., Pa. v. Schempp*, 374 U.S. 203, 226 n.10 (1963); *see* Douglas Laycock & Thomas C. Berg, *Protecting Free Exercise Under* Smith *and After* Smith, Cato Sup. Ct. Rev. at 33, 58 (2020–21) ("[T]he

19

government, by seizing sacred lands, took control over the tribes' ability to practice their traditions fully—in somewhat the same way that prisons control inmates' ability to practice their faith.").

While government generally is under no obligation to assume ownership or control of religious sites, once it does so, interference becomes the new baseline and the focus of the burden analysis shifts. The question then is not whether government has acted to interfere with a voluntary religious choice, but whether it has failed to act by refusing to alleviate some element of the omnipresent interference. Barclay & Steele, *supra,* at 1333. In other words, the question is not whether the government has stepped in but whether it has failed to step out in some way. The refusal to grant access to religious resources or otherwise accommodate religious exercise creates the burden. *See also Comanche Nation v. United States*, No. CIV-08-849-D, 2008 WL 4426621, at *3, *17 (W.D. Okla. Sep. 23, 2008) (construction of government building on federal land in "precise area" of plaintiff's "traditional religious practices" was substantial burden because it would "significantly inhibit" and "deny reasonable opportunities" for religious exercise).

When it comes to government-controlled religious property, indigenous sites aren't the only things at stake. "[T]here are around seventy churches within the national parks." Barclay & Steele, *supra*, at 1341. "The Ebenezer Baptist Church in which Martin Luther King Jr. preached is located on government leased property." *Id.* Congress established a National Historical Park "around four of the Southwest's famous Catholic mission churches," and one—San Xavier del Bac— "remains an important pilgrimage site that thousands visit each year." *Id.* Under the Ninth Circuit's reasoning, the government could close these places forever, or even raze them entirely, without ever undergoing RFRA scrutiny. That misunderstands how burden analysis works in cases of government control like this one.

Public schools, where government controls both the physical and informational environment, are another context where interference is the baseline. Here, too, government's failure to act—such as by refusing to permit a curricular opt out—can burden free exercise. *Mahmoud v. Taylor*, 145 S. Ct. 2332, 2360 (2025). The Supreme Court rejected the argument made by the dissent that "parents who send their children to public school must endure any instruction that falls short of direct

21

compulsion or coercion…. The Free Exercise Clause is not so feeble." *Id.* at 2360.

### E. A burden on religious exercise must be "substantial."

Burdens that are fleeting or de minimis or that admit of acceptable alternatives don't qualify. Not "every infringement on a religious exercise will constitute a substantial burden." *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1316 (10th Cir. 2010) (emphasis added). A court must examine "the nature and extent to which religious exercise is hampered or restrained by" government action. *Real Alternatives, Inc. v. Sec'y Dep't of Health & Hum. Servs.*, 867 F.3d 338, 365 (3d Cir. 2017). Substantial "doesn't mean complete or total." *Yellowbear*, 741 F.3d at 55. But the interference "must be more than incidental" and "more than an inconvenience"; it "must significantly hamper one's religious practice." *Smith v. Allen*, 502 F.3d 1255, 1277 (11th Cir. 2007) (cleaned up), abrogated on other grounds by *Sossamon v. Texas*, 563 U.S. 277 (2011). RFRA's substantiality requirement serves as "an imperative safeguard, else religious beliefs would invariably trump government action." *Real Alternatives*, 867 F.3d at 365.

22

Courts have fleshed out the meaning of "substantial" in various contexts, clarifying that a burden is not substantial if it (a) is fleeting, (b) is de minimis, or (c) leaves adherents free to pursue a religiously acceptable alternative.

*Fleeting.* While religious prisoners generally must be furnished with a religiously compliant diet, in *Norwood v. Strada*, 249 Fed Appx. 269, 272 (3d Cir. 2007), the "short denial of such a diet during an emergency lock-down" was a "mere de minimis intrusion," not a substantial burden. "[I]t is incredible," the court wrote, "that in such a short time period Norwood would have been forced to abandon one of the precepts of his religion" or "felt substantial pressure to modify his beliefs." *Id.*

*De Minimis.* Burdens that are de minimis or attenuated don't qualify as substantial, particularly when adherents retain a significant element of choice. Thus, in *Real Alternatives*, employees were not substantially burdened by the requirement that their employer's health plan cover contraceptives. The requirement only "broaden[ed] the availability of services that an employee might or might not access" and

23

it was "still up to the employee to decide what to do with those options." 867 F.3d at 361.[2]

Similarly, in *United States v. Friday*, 525 F.3d 938, 948 (10th Cir. 2008) (McConnell, J.), requiring a religious adherent to obtain a permit before killing an eagle was not a substantial burden because the adherent's religious tenets were not inconsistent with using the application process. And in *San Jose Christian College v. City of Morgan Hill*, 360 F.3d 1024, 1035 (9th Cir. 2004), requiring the college "to submit a complete [zoning] application, as is required of all applicants," did not substantially burden religious exercise. In these cases, courts examine "the connection between the conduct and the religious belief" and do not countenance burdens that are "negligible." *Real Alternatives*, 867 F.3d at 361.

*Religiously Acceptable Alternatives.* The Supreme Court "ha[s] not addressed" whether an available alternative that is religiously

---

[2] The situation in *Real Alternatives* was "[u]nlike *Hobby Lobby*" in which the employer had to "arrang[e] or provid[e]" the objectionable coverage. 867 F.3d at 362. Here, the employees didn't arrange or provide anything. They simply "bec[ame] eligible"—passively—for a "service of [their] choosing." *Id*. In this sense, *Real Alternatives* is as much a no-exercise case as a de-minimis-burden case.

24

"indistinguishable from the prohibited practice" alleviates a substantial burden. *Murphy v. Collier*, 139 S. Ct. 1475, 1484 (2019) (Alito, J., dissenting). But a number of cases have held that a burden isn't substantial when adherents, by their own admission, have religiously acceptable alternatives for a particular faith practice. *See also* Girgis, *supra*, at 1795 (advocating an "adequate alternatives principle" for substantial burden analysis, which asks whether a claimant still has "another way" to exercise religion to "about the same degree" and at "not much greater cost" (emphases deleted)).

In *Thiry v. Carlson*, 78 F.3d 1491, 1495–96 (10th Cir. 1996), the required relocation of a gravesite wasn't a substantial burden because plaintiffs' religious beliefs didn't prohibit relocation and they admitted they could voluntarily relocate. In *Oklevueha Native American Church of Hawaii, Inc. v. Lynch*, 828 F.3d 1012, 1017 (9th Cir. 2016), there was no substantial burden where an alternative means of sacramental practice was available: "We fail to see how prohibiting a substance that [plaintiffs] freely admit is a substitute would force them to act at odds with their religious beliefs." In *Henderson v. Kennedy*, 253 F.3d 12, 16–17 (D.C. Cir. 2001), plaintiffs' beliefs didn't require them to sell T-shirts in any

25

particular place, so a ban on sales on the National Mall was "at most a restriction on one of a multitude of means" and "not a substantial burden"; plaintiffs still could distribute for free on the Mall or they could sell on surrounding streets.

It is worth noting that none of these cases authorized government or courts to second-guess a claimant's religious beliefs about what counts as an adequate substitute. *Cf. Hobbs*, 574 U.S. at 361 (rejecting prison's assertion that "availability of alternative means of practicing [Islam]"— such as having a prayer rug and access to a religious diet— defeated a substantial-burden claim based on denial of a religiously mandated beard). Rather, in these cases, the religious claimants themselves identified the substitute as religiously acceptable.

*     *     *

RFRA's five threshold elements of exercise, religiosity, sincerity, burden, and substantiality play a gatekeeping role for claims. Though not onerous, each must be satisfied before a plaintiff can put the government to its burden of showing a compelling interest and least restrictive means. As limiting principles, they enable courts to fulfill RFRA's promise of broad religious liberty protection while screening out

26

unwarranted exemption claims. And they preclude the need for courts to second-guess Congress's policy choice and impose their own, extra textual limits on the RFRA analysis.

## II. The Ninth Circuit misconceived the substantial burden analysis under RFRA.

The Ninth Circuit's decision in the related case, *Apache Stronghold*, failed to respect Congress's choice and adhere to RFRA's plain language. There is no question as to the first three analytical elements: the Apaches have engaged in sincere religious exercise at Oak Flat for "at least a millennium."[3] *Apache Stronghold*, 101 F.4th at 1044. But the Ninth Circuit's en banc opinion misconceived the substantial burden analysis, reasoning that "the Government's management of its own land and internal affairs" is categorically walled off from RFRA's scrutiny. *Id*. at 1053. As other Circuits have recognized, wholly "prevent[ing]," "flatly prohibiting," and "refus[ing] … access" to religious exercise—all of which

---

[3] A millennium is a long time. The Apache have been making pilgrimages to Oak Flat since before the Declaration of Independence (1776), before the start of the Incan Empire (1438), before Genghis Kahn began his conquests (1206), and before William of Normandy invaded England (1066).

would result from the transfer and destruction of Oak Flat here—"easily" qualify as a substantial burden. *Yellowbear*, 741 F.3d at 55–56.

The government's omnipresent coercive control over Oak Flat means that a burden arises based on its refusal to allow access to the site or accommodate religious practice there. That burden only magnifies—it does not lessen—if the site is destroyed. At that point, the government's interference becomes permanent and irreversible, making it impossible to ensure access or an accommodation. That is a substantial burden, and the Ninth Circuit was wrong to conclude otherwise.

The Ninth Circuit reached its conclusion out of concern for overprotecting religious exercise and underserving the government's interest in land management and "internal affairs." But that gets RFRA backward. It "slip[s] it into the substantial burden analysis" the question that must be resolved on strict scrutiny—namely, how to resolve the "competing claims" of religious and nonreligious uses of federal land. *Apache Stronghold*, 38 F.4th at 783 (Berzon, J., dissenting).

The Supreme Court recently corrected a similar mistake made by the Fourth Circuit, which held in *Mahmoud v. McKnight* that a religious burden was only cognizable if the government "coerces" religious

28

practitioners "to *believe* or *act* contrary to their religious views." 102 F.3th 191, 208 (4th Cir. 2024). The Supreme Court rejected as "alarmingly narrow" the notion that the right to religious liberty offers "nothing more than protection against compulsion or coercion to renounce or abandon one's religion." *Mahmoud*, 145 S.Ct. at 2357–58.

Unlike here, the challenged government policy in *Mahmoud* did not make the plaintiffs' religious exercise impossible—just more expensive and time-consuming. *See id.* at 2359. Yet the Supreme Court had no trouble finding that that this non-coercive burden on religious exercise was sufficient, as "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Id.* at 2364 (quoting *Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020) (*per curiam*)).

As with the Fourth Circuit's decision in *Mahmoud*, this Court's decision in *Apache Stronghold* got the religious burden analysis wrong. It held the plaintiff to the wrong standard, thus giving the government a free pass on strict scrutiny, where it never has to prove that its ends are compelling and its means the least restrictive, as RFRA requires. That was error. The Supreme Court's decision in Mahmoud makes that error

29

all the more clear. The Court ought to take this opportunity to correct that error and bring its substantial burden jurisprudence back in line with the Supreme Court and its sister Circuits.

## CONCLUSION

The Court should reverse and remand for entry of a preliminary injunction.

Respectfully submitted,
s/ Eric N. Kniffin

IAN SPEIR
COVENANT LAW PLLC
13395 Voyager #130-732
Colo. Springs, CO 80921
(719) 464-7357
ian@covtlaw.com

ERIC N. KNIFFIN
  *Counsel of Record*
RACHEL N. MORRISON
ETHICS & PUBLIC POLICY CENTER
1730 M Street, N.W.
  Suite 910
Washington, DC 20036
(202) 682-1200
ekniffin@eppc.org

September 15, 2025

## CERTIFICATE OF COMPLIANCE

This brief complies with the word limit of Fed. R. App. P. 29(a)(5) and 9th Circuit Rule 29-2(c)(2) because this brief contains 5,690 words, excluding parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in Microsoft Word Version 2508 using a proportionally spaced typeface, 14-point Century Schoolbook.

Dated: September 15, 2025

s/ Eric N. Kniffin
Eric N. Kniffin

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was filed with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on September 15, 2025. I further certify that service was accomplished on all parties via the Court's CM/ECF system.

Dated: September 15, 2025

s/ Eric N. Kniffin
Eric N. Kniffin