**APPEAL NOS. 25-5185, 25-5189, 25-5197**

**UNITED STATES COURT OF APPEALS FOR
THE NINTH CIRCUIT**

GOUYEN BROWN LOPEZ, ET AL.,
Plaintiffs-Appellants,

v.

UNITED STATES OF AMERICA, ET AL.,
Defendants-Appellees

and

RESOLUTION COPPER MINING LLC,
Intervenor-Defendant-Appellee.

Appeal from the United States District Court
for the District of Arizona
Honorable Dominic W. Lanza
(2:25-cv-2758-PHX-DWL)

**BRIEF OF *AMICUS CURIAE* ETHICS AND PUBLIC POLICY CENTER IN
SUPPORT OF PETITION FOR REHEARING EN BANC**

Rachel N. Morrison
Eric N. Kniffin
Ethics & Public Policy Center
1730 M Street, N.W., Suite 910
Washington, DC 20036
(202) 682-1200
rmorrison@eppc.org

Ian Speir
Covenant Law PLLC
13395 Voyager Pkwy. #130-732
Colorado Springs, CO 80921
(719) 464-7357
ian@covtlaw.com

*Counsel for Amicus Curiae*

**Corporate Disclosure Statement**

The Ethics and Public Policy Center is a nonprofit corporation recognized as tax-exempt under § 501(c)(3). It does not issue stock and has no parent corporation.

## Table of Contents

Corporate Disclosure Statement.................................................................i

Table of Contents ...................................................................... ii

Table of Authorities ................................................................ iii

Identity and Interest of *Amicus Curiae* ...................................................1

Summary of Argument......................................................................1

Argument......................................................................................3

    I.       RFRA's five threshold limiting principles...................................4

        A.   RFRA requires specific religious "exercise," not mere subjective feelings of offense. ...................................................................4

        B.   The exercise must be "religious" in nature, not personal, philosophical, or ideological. ....................................................................6

        C.   Religious exercise must be "sincere," not contrived for litigation. ...........7

        D.   Failing to subsidize or support religious exercise is not a "burden," but inhibiting or penalizing it is.....................................................9

        E.   A burden on religious exercise must be "substantial." Burdens that are de minimis or admit of acceptable alternatives don't qualify. .............................14

    II.     *Apache Stronghold* misconceived RFRA's substantial burden analysis. 17

Conclusion........................................................................................18

Certificate of Compliance ...............................................................20

Certificate of Service...........................................................................20

## Table of Authorities

**Cases**

*Abdulhaseeb v. Calbone*, 600 F.3d 1301  (10th Cir. 2010)…………………...…14

*Apache Stronghold v. United States*, 145 S. Ct. 1480 (2025)…………………….17, 18

*Apache Stronghold v. United States*, 101 F.4th  1036 (9th Cir. 2024)
(en banc)…………………………………………………………...2, 6, 17, 18, 19

*Apache Stronghold v. United States*, 38 F.4th 742  (9th Cir. 2022)
(panel opinion)…………………………………………………………...2, 11, 18

*Bowen v. Roy*, 476 U.S.  693 (1986)………………………………………….5-6

*Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014)………………………1

*Comanche Nation v. United States*, No. CIV-08-849-D, 2008 WL 4426621
(W.D. Okla. Sep. 23, 2008)……………………………………………………13

*Espinoza v. Mont. Dep't of Revenue*, 591 U.S. 464 (2020)………………………10

*Friedman* v. *S. Cal. Permanente Med. Grp.*, 125 Cal. Rptr. 2d 663
(Cal. App. 2002)………………………………………………………………7

*Gonzales v. O Centro*, 546 U.S. 418 (2006)………………………………..1, 4

*Goodall by Goodall v. Stafford County Sch. Bd.*, 60 F.3d 168 (4th Cir. 1995)…….10

*Henderson v. Kennedy*, 253 F.3d 12 (D.C. Cir. 2001)……………………………16

*Holt v. Hobbs*, 574 U.S. 352 (2015)……………………………………………16

*Kaemmerling v. Lappin*, 553 F.3d 669 (D.C. Cir. 2008)………………………4-5

*Korte v. Sebelius*, 735 F.3d 654 (7th Cir. 2013)………………………………8

*Locke v. Davey*, 540 U.S. 712 (2004)……………………………………………………...10

*Lozano v. Collier*, 98 F.4th 614 (5th Cir. 2024).........................................................9

*Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439 (1988)……………….6

*Mahmoud v. Taylor*, 606 U.S. 522 (2025)…………………………………………11

*Mahone v. Pierce County.*, No. 10-5847, 2011 WL 2360354 (W.D. Wash. May 24, 2011)………………………………………………………………………8

*Makin v. Colo. Dep't of Corrs.*, 183 F.3d 1205 (10th Cir. 1999)…………………11

*Mayle v. United States*, 891 F.3d 680 (7th Cir. 2018)……………………………….6

*Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058 (9th Cir. 2008)…………………6

*Norwood v. Strada*, 249 Fed. Appx. 269 (3d Cir. 2007)…………………………...15

*Ochs v. Thalacker*, 90 F.3d 293 (8th Cir. 1996)…………………………………….8

*Oklevueha Native American Church of Hawaii, Inc. v. Lynch*, 828 F.3d 1012 (9th Cir. 2016)………………………………………………………………………..16

*Patrick v. LeFevre*, 745 F.2d 153 (2d Cir. 1984) ………………………………8, 9

*Real Alternatives, Inc. v. Sec'y Dep't of Health & Hum. Servs.*, 867 F.3d 338 (3d Cir. 2017)………………………………………………………………….14, 15

*San Jose Christian College v. City of Morgan Hill*, 360 F.3d 1024 (9th Cir. 2004)………………………………………………………………………..15

*Sch. Dist. of Abington Twp., Pa. v. Schempp*, 374 U.S. 203 (1963)…………..……12

*Smith v. Allen*, 502 F.3d 1255 (11th Cir. 2007)……………………………………14

iv

*Sossamon v. Texas*, 563 U.S. 277 (2011)……………………………………………..14

*Thiry v. Carlson*, 78 F.3d 1491 (10th Cir. 1996)………………………………………...16

*Thomas v. Review Board*, 450 U.S. 707 (1981)......................................................6

*Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449 (2017)……….11

*United States v. Friday*, 525 F.3d 938 (10th Cir. 2008)…………………………………15

*United States v. Manneh*, 645 F. Supp. 2d 98 (E.D.N.Y. 2008)………………....…9

*United States v. Martines*, 682 Fed. Appx. 768 (9th Cir. 2014)………………....…8

*United States v. Meyers*, 95 F.3d 1475 (10th Cir. 1996)…………………………….7

*United States v. Quaintance*, 608 F.3d 717 (10th Cir. 2010)………………….....…8

*United States v. Seeger*, 380 U.S. 163 (1965)………………………………………….7

*Wisconsin v. Yoder*, 406 U.S. 205 (1972)………………………………………...7

*Yellowbear v. Lampert*, 741 F.3d 48 (10th Cir. 2014)…………….....…4, 7, 12, 14, 18

## Statutes and Rules

42 U.S.C. § 2000bb-1……………………………………………………………….1

42 U.S.C. § 2000cc-5………………………………………………………………….7

Fed. R. App. P. 29………………………………………………………………….1

## Other Authorities

Stephanie Hall Barclay & Michalyn Steele, *Rethinking Protections for Indigenous Sacred Sites*, 134 Harv. L. Rev. 1294 (2021)…...........................................10, 11, 13

Nathan S. Chapman, *Adjudicating Religious Sincerity*, 92 Wash. L. Rev. 1185 (2017)……………………………………………………………………………8

Sherif Girgis, *Defining "Substantial Burdens" on Religion and Other Liberties*, 108 Va. L. Rev. 1759 (2022)…………………………………………………………2, 5, 16

Luke W. Goodrich & Rachel N. Busick, *Sex, Drugs, and Eagle Feathers: An Empirical Study of Federal Religious Freedom Cases*, 48 Seton Hall L. Rev. 353 (2018)………………………………………………………..…2, 3

Douglas Laycock & Thomas C. Berg, *Protecting Free Exercise Under* Smith *and After* Smith, Cato Sup. Ct. Rev. (2020–21)………………………………..……12

Michael W. McConnell, *Religious Freedom at a Crossroads*, 59 U. Chi. L. Rev. 115 (1992)…………………………………………………………..10

Michael W. McConnell, *The Origins and Historical Understanding of Free Exercise of Religion*, 103 Harv. L. Rev. 1409 (1990)…………..……………....……7

**Identity and Interest of *Amicus Curiae*[1]**

*Amicus Curiae* Ethics and Public Policy Center (EPPC) is a nonprofit research institution founded in 1976 and dedicated to applying the Judeo-Christian moral tradition to issues of law, culture, and public policy. EPPC's programs cover a wide range of issues, including government accountability, judicial restraint, and religious liberty. EPPC submits this brief to highlight limiting principles under the Religious Freedom Restoration Act that allow courts to protect religious liberty and weed out unwarranted exemption claims.

**Summary of Argument**

The Religious Freedom Restoration Act (RFRA) promises "very broad protection for religious liberty." *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 693 (2014). The statute prohibits government from substantially burdening religious exercise unless doing so achieves a compelling interest through the least restrictive means. 42 U.S.C. § 2000bb-1. Congress's aim was to "strik[e] sensible balances between religious liberty and competing prior governmental interests." *Gonzales v. O Centro*, 546 U.S. 418, 423 (2006) (quotation omitted).

---

[1] No party's counsel authored this brief in whole or in part. No party or its counsel contributed money that was intended to fund preparing or submitting this brief. No person—other than *amicus,* its members, or its counsel—contributed money that was intended to fund preparing or submitting this brief. *See* FRAP 29(a)(4)(E).

Yet some worry that RFRA "fail[s] to impose sensible limits on exemptions" and overprotects religious exercise. *See* Sherif Girgis, *Defining "Substantial Burdens" on Religion and Other Liberties*, 108 Va. L. Rev. 1759, 1762 (2022) (citing such critics); Luke W. Goodrich & Rachel N. Busick, *Sex, Drugs, and Eagle Feathers: An Empirical Study of Federal Religious Freedom Cases*, 48 Seton Hall L. Rev. 353, 356 (2018) (discussing and dispelling this "common narrative"). Policy concerns like these featured prominently in this Court's *Apache Stronghold* decisions. *See Apache Stronghold v. United States*, 101 F.4th 1036, 1055 (9th Cir. 2024) (en banc) (too-expansive view of free exercise would impose "religious servitude[s]" on government land and "confer *de facto* beneficial ownership of some rather spacious tracts of public property" (cleaned up)); *Apache Stronghold v. United States*, 38 F.4th 742, 756 (9th Cir. 2022) (panel opinion) ("Were the scope of a substantial burden under RFRA" too broad, "any" government action "would be subject to the personalized oversight of millions of citizens." (cleaned up)).

But RFRA is a statute, and policy concerns like these are Congress's purview. The concerns raised by critics are unfounded anyway. The religious liberty that RFRA protects is not unconstrained. By its terms, RFRA contains five textually based limiting principles that temper religious liberty claims and sensibly limit exemptions. A RFRA plaintiff must make a threshold showing of a (1) substantial (2) burden on (3) sincere (4) religious (5) exercise. Only then must government show

a compelling interest advanced by the least restrictive means. RFRA's threshold showing isn't onerous, but nor is it toothless. These limiting principles do real work, even in hard cases, enabling courts to protect religious liberty while "weeding out weak or insincere RFRA claims." Goodrich & Busick, *supra*, at 356.

## Argument

As discussed in depth below, RFRA applies when a plaintiff makes a threshold showing of a (1) substantial (2) burden on (3) sincere (4) religious (5) exercise. Taking the elements in reverse order facilitates the analysis.

*First*, the claim must seek to protect a specific religious "**exercise**"—an act or abstention rooted in religious belief. Mere subjective feelings of offense or sacrilege don't qualify.

*Second*, the exercise must be "**religious**." Acts or abstentions rooted in personal, philosophical, or ideological opposition don't qualify.

*Third*, the religious exercise must be "**sincere**"— a genuinely held, good-faith expression of religious conviction. Practices contrived for litigation don't qualify.

*Fourth*, government action must "**burden**" a sincere religious exercise, meaning it must inhibit or penalize it in some way. Mere refusals to subsidize or support religious observance don't qualify.

3

*Fifth*, the burden must be "**substantial**"—that is, of ample or considerable amount. Interference that is de minimis or that allows religiously acceptable alternatives doesn't qualify.

While courts don't always precisely distinguish these concepts, they are in play in every RFRA case, helping courts sift the wheat of religious liberty from the chaff of unwarranted exemption claims. And even when RFRA's threshold showing is met, the government still may show it is furthering a compelling interest by the least restrictive means. This is a demanding inquiry but not insurmountable. *O Centro*, 546 U.S. at 436 ("[T]here may be instances in which a need for uniformity precludes the recognition of exceptions … under RFRA."); *Yellowbear v. Lampert*, 741 F.3d 48, 57 (10th Cir. 2014) (Gorsuch, J.) (stating that under RFRA's sister statute, the Religious Land Use and Institutionalized Persons Act (RLUIPA), "solicitude for religious exercise must sometimes yield to other competing state interests").

## I.     RFRA's five threshold limiting principles

### A.     RFRA requires specific religious "exercise," not mere subjective feelings of offense.

The "exercise" that RFRA protects is an act or abstention rooted in religious belief. "Religious exercise necessarily involves an action or practice," and to trigger RFRA, government must pressure an adherent to "modify his religious behavior" or "interfere with [a] religious act in which he engages." *Kaemmerling v. Lappin*, 553

F.3d 669, 679 (D.C. Cir. 2008). By contrast, simply taking offense at something the government does isn't protected.

In *Kaemmerling*, the plaintiff's objection was not to the government's collection of his tissue sample but to its later analysis of the sample to collect DNA information, which the plaintiff claimed to "kno[w]" was an "unholy act of an oppressive regime." *Id.* at 678–69 (cleaned up). This failed to "identify any 'exercise' which is the subject of the burden to which he objects." *Id.* at 679. "Kaemmerling alleges no religious observance that the DNA Act impedes, or acts in violation of his religious beliefs that it pressures him to perform." *Id.*

*Bowen v. Roy*, 476 U.S. 693 (1986), rests on the same principle. The plaintiff objected to two features of a benefits law: (1) "the Government's use" of a Social Security number to identify his daughter, and (2) the requirement that he himself "furnish" the government with her number to obtain benefits. *See id.* at 699–700. As to the first, his challenged failed. While the Court framed this aspect of the claim as an effort to "dictate the Government's internal procedures," *id.* at 700, rightly understood, it was about lack of religious exercise at all. The relevant government action did not "inhibit the claimant's religious conduct" in any way. *See* Girgis, *supra*, at 1806. But as to the second aspect, a majority of the Court ruled in the plaintiff's favor, reasoning that his religious practice was burdened because the government had "'condition[ed] receipt of an important benefit'" on his own

5

religiously forbidden "'conduct.'" *See id.* at 727 (O'Connor, J., joined by Brennan and Marshall, JJ.) (quoting *Thomas v. Review Bd.*, 450 U.S. 707, 717–18 (1981)); *id.* at 715–16 (Blackmun, J., concurring) ("straightforward application of … *Thomas*"); *id.* at 733 (White, J., dissenting) (*Thomas* "control[s]").

Other cases recognize that adverse effects on subjective feelings and experiences don't clear RFRA's threshold. *E.g.*, *Mayle v. United States*, 891 F.3d 680 (7th Cir. 2018) (subjective feelings of "guilt, shame, and … fear" to presence of "In God We Trust" on currency not "substantial burden"). Both *Lyng* and *Navajo Nation* should be understood in this light. *See Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 443, 448, 450 (1988) (no free exercise violation where plaintiffs had access to site, though "sacredness" and "spiritual development" were "diminish[ed]"); *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1063 (9th Cir. 2008) (no burden where use of site not "physically affected" and "sole effect" was on "subjective spiritual experience"), *overruled on other grounds by Apache Stronghold*, 101 F.4th 1036. By contrast here, Oak Flat's destruction doesn't just diminish the spiritual experience; it turns the site into a massive crater, making physical access impossible. *See* 101 F.4th at 1043.

## B. The exercise must be "religious" in nature, not personal, philosophical, or ideological.

To be "*religious*" exercise, an act or abstention must be rooted "in religious belief" as opposed to personal, philosophical, or ideological considerations.

6

*Wisconsin v. Yoder*, 406 U.S. 205, 216 (1972). "A way of life, however virtuous and admirable, … based on purely secular considerations" "does not rise to the demands of the Religion Clauses." *Id*. So, too, with RFRA and RLUIPA, which protect "only" those convictions "motivated by religious faith." *Yellowbear*, 741 F.3d at 53; *see United States v. Meyers*, 95 F.3d 1475, 1484 (10th Cir. 1996) (belief in "[m]arijuana's medical, therapeutic, and social effects" was "secular, not religious"); *Friedman v. S. Cal. Permanente Med. Grp.*, 125 Cal. Rptr. 2d 663, 685 (Cal. App. 2002) ("While veganism compels plaintiff to live in accord with strict dictates of behavior, it reflects a moral and secular, rather than religious, philosophy"); Michael W. McConnell, *The Origins and Historical Understanding of Free Exercise of Religion*, 103 Harv. L. Rev. 1409, 1498 (1990) ("protection of private judgment (secular 'conscience') fundamentally differs from the protection of free exercise of religion").

### C. Religious exercise must be "sincere," not contrived for litigation.

Under RFRA, courts don't ask whether a particular practice is "compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). But they do ask whether a plaintiff is "sincere." Sincerity is a "threshold question" "in every case" because "[w]hile the truth of a belief is not open to question, there remains the significant question whether it is truly held." *United States v. Seeger*, 380 U.S. 163, 185 (1965).

Sincerity "is a factual matter," *United States v. Quaintance*, 608 F.3d 717, 721 (10th Cir. 2010) (Gorsuch, J.), in which a court "seeks to determine an adherent's good faith in the expression of his religious belief," *Patrick v. LeFevre*, 745 F.2d 153, 157 (2d Cir. 1984). Courts adjudicate religious sincerity just like "any other factual determination of a party's mental state." Nathan S. Chapman, *Adjudicating Religious Sincerity*, 92 Wash. L. Rev. 1185, 1191 (2017); *see Korte v. Sebelius*, 735 F.3d 654, 683 (7th Cir. 2013) ("Checking for sincerity … weed[s] out sham claims.").

In *Quaintance*, the Tenth Circuit rejected a RFRA defense because "numerous pieces of evidence" "strongly suggest[ed]" the defendants' "marijuana dealings were motivated by commercial or secular motives rather than sincere religious conviction." 608 F.3d at 722; *see also United States v. Martines*, 682 Fed. Appx. 768 (9th Cir. 2014). Similar logic obtained in *Ochs v. Thalacker*, 90 F.3d 293, 296 (8th Cir. 1996): "[W]e are skeptical that Ochs's request to be racially segregated, first made in the midst of prison racial disturbances, reflected a sincerely held religious belief." As numerous decisions attest, sincerity is a robust limiting principle in RFRA and free exercise cases. *E.g.*, *Mahone v. Pierce County*, No. 10-5847, 2011 WL 2360354, at *7–8 (W.D. Wash. May 24, 2011) (plaintiff was not "sincere in his profession that he is Jewish" because there was "no evidence that [he] ... ever engaged in the practices and tenets of Judaism other than his stated belief

8

that he must eat kosher foods"); *United States v. Manneh*, 645 F. Supp. 2d 98, 111 (E.D.N.Y. 2008) ("[D]efendant's religious beliefs relating to bushmeat are not the bona fide explanation for the criminal conduct she is charged with committing.").

Sincerity analysis offers "a rational means of differentiating between those beliefs that are held as a matter of conscience and those that are animated by motives of deception and fraud." *Patrick*, 745 F.2d at 157. While it may sometimes "appear to overlap with the test for what is 'religious,'" sincerity is "a discrete element in RFRA and Free Exercise analyses." *Manneh*, 645 F. Supp. 2d at 111.

**D.     Failing to subsidize or support religious exercise is not a "burden," but inhibiting or penalizing it is.**

While many courts treat "substantial burden" as an undifferentiated whole, the question of whether there is a *burden* is analytically distinct from whether that burden is *substantial* enough to trigger RFRA's scrutiny.

Usually, a burden arises based on something the government *does*, not what it fails to do. In most contexts of American life, "voluntary choice is the baseline." *Lozano v. Collier*, 98 F.4th 614, 628 (5th Cir. 2024) (Oldham, J., concurring in judgment). People are free to make their own choices in religious matters, and "government is generally under no legal compulsion to affirmatively subsidize or support those choices." *Id*. RFRA "does not require the federal government to build churches or employ rabbis." *Id*.

9

In voluntary-choice cases, government creates a burden when it "bring[s] to bear its sovereign power in a way that inhibits … religious voluntarism," thereby decreasing a person's ability to practice their faith "consistent with their own free self-development." Stephanie Hall Barclay & Michalyn Steele, *Rethinking Protections for Indigenous Sacred Sites*, 134 Harv. L. Rev. 1294, 1325 (2021). Burden analysis thus begins with a "hypothetical world in which individuals make decisions about religion on the basis of their own religious conscience," then asks whether and to what extent a particular government action interferes with those decisions. *See* Michael W. McConnell, *Religious Freedom at a Crossroads*, 59 U. Chi. L. Rev. 115, 169 (1992). The aim is to "ensure that religion remains a matter of voluntary choice by individuals and their associations." *Espinoza v. Mont. Dep't of Revenue*, 591 U.S. 464, 514 (2020) (Gorsuch, J., concurring) (cleaned up). And as long as government doesn't interfere with voluntary choice, it doesn't burden free exercise. *See, e.g.*, *Goodall by Goodall v. Stafford County Sch. Bd.*, 60 F.3d 168, 172 (4th Cir. 1995) (RFRA and Free Exercise Clause do not "impose upon the government an obligation to subsidize" voluntary private choices).

But there are at least two contexts where this general rule is altered. The first is public-benefit cases. When government "makes a public benefit generally available, that benefit becomes part of the baseline against which burdens on religion are measured." *Locke v. Davey*, 540 U.S. 712, 726–27 (2004) (Scalia, J., dissenting).

At that point, the relevant question is not whether the religious adherent is "entitle[d] to a subsidy" but whether she has a "right to participate" in the benefit on "equal footing" without disavowing faith. *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 463 (2017) (cleaned up). Because denying that right "inevitably deters or discourages" religious exercise, heightened scrutiny applies. *Id.*

The second exception is when "government so wholly occupies the field" that *government interference* rather than voluntary choice is the baseline. Barclay & Steele, *supra*, at 1333. Under this heading are prison facilities, military environments, zoning, public schools, and government-controlled sacred sites. In these contexts, religious observers are at the mercy of government. They can't voluntarily practice their faith unless the government affirmatively permits access or "acts to lift its coercive power through a religious accommodation." *Id*. In such cases, courts usually have no trouble recognizing a burden based on the government's denial of access or failure to accommodate. *See id.* at 1333–42; *e.g.*, *Mahmoud v. Taylor*, 606 U.S. 522, 556–57 (2025) ("direct, coercive" features of public school environment required religious accommodation); *Makin v. Colo. Dep't of Corrs.*, 183 F.3d 1205, 1211 (10th Cir. 1999) ("failure to accommodate" Muslim inmate's meal requirements violated free exercise rights); *Apache Stronghold*, 38 F.4th at 780 (Berzon, J., dissenting) ("government's denial of access to religious resources" is a "burden on religious exercise").

11

Then-Judge Gorsuch's opinion for the Tenth Circuit in *Yellowbear* is illustrative. There, a state correctional facility barred a Native American prisoner from accessing a government-owned sacred site, a sweat lodge on prison grounds. 741 F.3d at 56. The prisoner's faith "require[d] at least *some* access" to the site but because prison policy "refuse[d] *any* access," the court found a RLUIPA violation. *Id.* "[F]latly prohibiting" religious exercise "easily" qualified as a substantial burden. *Id.* Because this was not a situation "where the claimant is left with some degree of choice in the matter," to ask about the government's "coercive influence on" or interference with "that choice" would make little sense. *Id.*

This gets the burden analysis exactly right in cases of government control— because when government "regulates the temporal and geographic environment of individuals," it may have to take steps to "permit" religious exercise lest individuals be "unable to engage in the practice of their faiths." *Sch. Dist. of Abington Twp., Pa. v. Schempp*, 374 U.S. 203, 226 n.10 (1963); *see* Douglas Laycock & Thomas C. Berg, *Protecting Free Exercise Under* Smith *and After* Smith, Cato Sup. Ct. Rev. at 33, 58 (2020–2021) ("[T]he government, by seizing sacred lands, took control over the tribes' ability to practice their traditions fully—in somewhat the same way that prisons control inmates' ability to practice their faith.").

While government generally is under no obligation to assume ownership or control of religious sites, once it does so, interference becomes the new baseline and

12

the focus of the burden analysis shifts. The question then is not whether the government has acted to interfere with a voluntary religious choice, but whether it has *failed to act* by refusing to alleviate some element of the omnipresent interference. Barclay & Steele, *supra*, at 1333. In other words, the question is not whether the government has *stepped in* but whether it has *failed to step out*. The refusal to grant access to religious resources or otherwise accommodate religious exercise creates the burden. *See Comanche Nation v. United States*, No. CIV-08-849-D, 2008 WL 4426621, at \*3, \*17 (W.D. Okla. Sep. 23, 2008) (construction of government building on federal land in "precise area" of plaintiff's "traditional religious practices" was substantial burden because it would "significantly inhibit" and "deny reasonable opportunities" for religious exercise).

When it comes to government-controlled religious property, indigenous sites aren't the only things at stake. "[T]here are around seventy churches within the national parks." Barclay & Steele, *supra*, at 1341. "The Ebenezer Baptist Church in which Martin Luther King Jr. preached is located on government-leased property." *Id*. Congress established a National Historical Park "around four of the Southwest's famous Catholic mission churches," and one—San Xavier del Bac—"remains an important pilgrimage site that thousands visit each year." *Id*. Under *Apache Stronghold*, the government could close these places forever or raze them entirely without undergoing RFRA scrutiny.

13

Worse, that decision creates perverse incentives for aggressive land acquisition and sweeping assertions of sovereignty over religious sites. If controlling land categorically eliminates substantial burden analysis, the government can evade RFRA simply by acquiring property—precisely the pattern that characterized federal Indian policy for over a century. A rule that rewards government expansion into domains of religious exercise, rather than constraining it, inverts RFRA's purpose.

### E. A burden on religious exercise must be "substantial." Burdens that are de minimis or admit of acceptable alternatives don't qualify.

Not "every infringement on a religious exercise will constitute a *substantial* burden." *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1316 (10th Cir. 2010) (emphasis added). A court must examine "the nature and extent to which religious exercise is hampered or restrained by" government action. *Real Alternatives, Inc. v. Sec'y Dep't of Health & Hum. Servs.*, 867 F.3d 338, 365 (3d Cir. 2017). Substantial "doesn't mean complete or total." *Yellowbear*, 741 F.3d at 55. But the interference "must be more than incidental" and "more than an inconvenience"; it "must significantly hamper one's religious practice." *Smith v. Allen*, 502 F.3d 1255, 1277 (11th Cir. 2007) (cleaned up), *abrogated on other grounds by Sossamon v. Texas*, 563 U.S. 277 (2011). RFRA's substantiality requirement serves as "an imperative safeguard, else religious beliefs would invariably trump government action." *Real Alternatives*, 867 F.3d at 365. A burden is not substantial if it is de minimis or leaves adherents free to pursue a religiously acceptable alternative.

14

***De Minimis***. Burdens that are de minimis or attenuated don't qualify as substantial, particularly when adherents retain a significant element of choice. Thus, in *Real Alternatives*, employees were not substantially burdened by the requirement that their employer's health plan cover contraceptives. The requirement only "broaden[ed] the availability of services that an employee might or might not access" and it was "still up to the employee to decide what to do with those options." 867 F.3d at 361. (Because the employees weren't required to arrange or provide the objectionable coverage and simply became passively eligible for it, *see id.*, *Real Alternatives* is as much a no-exercise as a de-minimis-burden case.)

Similarly, in *United States v. Friday*, 525 F.3d 938, 948 (10th Cir. 2008) (McConnell, J.), requiring the plaintiff to obtain a permit before killing an eagle was not a substantial burden because his religious tenets were not inconsistent with using the application process. *See also Norwood v. Strada*, 249 Fed. Appx. 269, 272 (3d Cir. 2007) (short denial of prisoner's religious diet during emergency lockdown was "mere de minimis intrusion"); *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1035 (9th Cir. 2004) (requiring college "to submit a *complete* [zoning] application, as is required of all applicants," was not substantial burden). In these cases, courts examine "the connection between the conduct and the religious belief" and do not countenance "negligible" burdens. *Real Alternatives*, 867 F.3d at 361.

*Acceptable Alternatives*. A burden isn't substantial when adherents, by their own admission, have religiously acceptable alternatives for a particular practice. *See* Girgis, *supra*, at 1795 (advocating an "adequate alternatives principle," asking whether claimant has "another way" to exercise religion to "about the same degree" and at "not much greater cost" (emphases deleted)).

In *Thiry v. Carlson*, 78 F.3d 1491, 1495–96 (10th Cir. 1996), the required relocation of a gravesite wasn't a substantial burden because plaintiffs' religious beliefs didn't prohibit relocation and they admitted they could voluntarily relocate. In *Oklevueha Native American Church of Hawaii, Inc. v. Lynch*, 828 F.3d 1012, 1017 (9th Cir. 2016), there was no substantial burden where plaintiffs "freely admit[ted]" they had a "substitute" substance for sacramental practice. In *Henderson v. Kennedy*, 253 F.3d 12, 16–17 (D.C. Cir. 2001), plaintiffs' beliefs didn't require them to sell T-shirts in any particular place, so a ban on sales on the National Mall was "at most a restriction on one of a multitude of means" and "not a substantial burden."

None of these cases authorized government or courts to second-guess a claimant's religious beliefs about what counts as an adequate substitute. Rather, the religious claimants themselves identified the substitute as religiously acceptable. *Cf. Holt v. Hobbs*, 574 U.S. 352, 361 (2015) (rejecting prison's assertion that

16

"availability of alternative means of practicing [Islam]," such as prayer rug and religious diet, defeated substantial-burden claim).

*　　*　　*

RFRA's five threshold elements of *exercise*, *religiosity*, *sincerity*, *burden*, and *substantiality* play a gatekeeping role for claims. Though not onerous, each must be satisfied before a plaintiff can put government to its burden of showing a compelling interest and least restrictive means. As limiting principles, they enable courts to fulfill RFRA's promise of broad religious liberty protection while screening out unwarranted exemption claims. And they preclude the need for courts to second-guess Congress's policy choice and impose their own, extra-textual limits on the RFRA analysis.

## II.　*Apache Stronghold* misconceived RFRA's substantial burden analysis.

The en banc Court in *Apache Stronghold* failed to respect Congress's choice and adhere to RFRA's plain language. Here, the first three analytical elements are undisputed, as the Apaches have engaged in sincere religious exercise at Oak Flat for at least a millennium. But this Court misconceived the substantial burden analysis, reasoning that "the Government's management of its own land and internal affairs" is categorically walled off from RFRA's scrutiny. *Apache Stronghold*, 101 F.4th at 1053. "Exactly nothing" in RFRA's text even "hints" in that direction. *Apache Stronghold v. United States*, 145 S. Ct. 1480, 1486 (2025) (Gorsuch, J.,

17

dissenting from denial of certiorari). "[A]n action that prevents a religious exercise does not just burden that exercise substantially, it burdens it completely." *Id.*

The government's omnipresent coercive control over Oak Flat means the burden arises when it bars access to the site or refuses to accommodate religious practice there. That burden only magnifies—it does not lessen—if the government authorizes the site's permanent destruction. At that point, government interference becomes permanent and irreversible. *See Yellowbear*, 741 F.3d at 55–56 (preventing, prohibiting, and refusing access to religious exercise "easily" qualify as substantial burden). While *Apache Stronghold* is premised on a concern for overprotecting religious exercise and underserving government interests, that gets RFRA backward. It "slip[s] it into the substantial burden analysis" the question that must be resolved on strict scrutiny—namely, how to resolve the "competing claims" of religious and nonreligious uses of federal land. *Apache Stronghold*, 38 F.4th at 783 (Berzon, J., dissenting). And it gives government a free pass on strict scrutiny, where it never has to prove that its ends are compelling and its means the least restrictive, as RFRA requires.

## Conclusion

This Court's "extraordinary holding" in *Apache Stronghold*, *see* 145 S. Ct. at 1486 (Gorsuch, J., dissenting from denial of certiorari), sanctioned the obliteration of a sacred religious site and categorically prevents the Apaches from ever again

18

exercising their faith there. Denying that this constitutes a substantial burden was, and continues to be, a "tragi[c] err[or]." 101 F.4th at 1157 (Murguia, J., dissenting). The petition for rehearing should be granted.

Respectfully submitted,

/s/ Ian Speir

Ian Speir
Covenant Law PLLC
13395 Voyager Pkwy. #130-732
Colorado Springs, CO 80921
(719) 464-7357
ian@covtlaw.com

*Counsel for* Amicus Curiae

19

**Certificate of Compliance**

This brief complies with the length limitation of Fed. R. App. P. 29(a)(5) and Circuit Rule 29-2 because it contains 4,197 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). This brief also complies with the requirements of Fed. R. App. P. 32(a) and Circuit Rule 32(b) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Mac (Version 16.108.2) in 14-point Times New Roman font.

/s/*Ian Speir*
Ian Speir

**Certificate of Service**

I certify that on May 7, 2026, the foregoing brief was served on counsel for all parties by means of the Court's ECF/ACMS system.

/s/*Ian Speir*
Ian Speir